On the case 14-6185, Larry Downs v. Bel Brands USA, Inc. Oral argument not to exceed 15 minutes per side. Brian Gary Abell for the appellate. Take your time. No problem. Thank you. Counsel. May it please the court, my name is Brian Abell. I represent the appellant, Larry Downs. I'm from the firm Adams Hayward Welsh in Louisville, Kentucky. We're here on a 12-B motion to dismiss Larry Downs' age discrimination case with also promissory estoppel cases. Have you reserved time for rebuttal? Five minutes, I'm sorry. I did mention it, but all appellants should remind the panel, if you would, that you've reserved such time.  Your Honor, we reserve five minutes for rebuttal. Thank you. Your Honor, we're here today on a 12-B-6 motion to dismiss from the Western District at Owensboro. Larry Downs worked for Bel Brands, a company that makes cheese, for 38 years. Starting in 1975, he was terminated after the company found out that he was selling old and damaged pallets that he was given permission to sell as early as 1990. The pallet deal spanned over three supervisors and over 20 years. He was given permission to do that and do that over and over. It wasn't until 2013 they got a new plant manager and a new supervisor that came in, offered older employees severance packages, did not offer my client Larry Downs a severance package, and instead several months later he was terminated because of his age. We filed suit. It was removed to the Western District of Kentucky at Owensboro on diversity grounds. We got a 12-B-6 motion to dismiss for failure to state a claim saying that it was not plausible under the constitutional pleading standards at the time that he failed to state a claim for relief on his age claim and on his promissory estoppel claim. We challenged that, stating our complaint was verified and well pled with sufficient facts to get him through the discovery phase, which our client is entitled to do, and to take this to its ultimate conclusion would be to a trial for his Seventh Amendment rights. Counsel, can I ask you this question? Yes, sir. Under your pleading, which was dismissed on the pleadings as I understand it, in paragraphs 25, 26, through 28, you allege a sort of contract theory about the pellets that were given permission and an agreement was made that he could sell them and then he was discharged for that. You haven't abandoned that claim, I take it? You still, on appeal, you haven't abandoned that claim? We have not abandoned that claim, Your Honor. I didn't find much in your brief about this. About the promissory estoppel claim? Yeah, the contract. Certainly. Your Honor, we addressed the promissory estoppel claim. It is addressed. It's not addressed as the age claim, which of course would be the primary claim, that he was fired because of his age. Now the promissory estoppel claim also opens up the door to get past some other deficiencies that we may have, saying that basically that essentially starting in 1990 he was given express permission to sell these and it was confirmed over three times throughout the years. Now if the question is why wasn't that elaborated in any further detail, I believe that I covered it to the extent that I needed to for the purposes of this brief, the way that I chose to practice this case. The only thing I see in your brief about it is a subsection D on page 14. It says whether the affidavits of Ruth and Plessis were properly entered into the record, and then under that heading you do make reference to the contract claim, but that's the only thing I see in your briefs that is seeking to appeal the ruling of the district court, right? Let me see. Yes, that is correct, Your Honor. To address the affidavits of why that contract claim comes in there, those affidavits were to approve that this was known and would fall under the elements of the promissory estoppel. We went to the man himself who gave the oral directive, you may do this, you may sell these pallets and you may keep the check, you're doing us a favor at the plant, we appreciate that, and I believe that that's the reason that that specific promissory estoppel issue was discussed in the section for the affidavits and how to get that in. Essentially, Karen Ruth had general knowledge because she was employed, she wasn't privy to the supervisor's oral acknowledgment or specific conversations to Larry Downs, but her testimony is that everyone knew, hey, you give the broken pallets to Larry, he'll sell them, he'll fix them. He's been doing that since 1990, et cetera. The affidavit of John Pierre Plessis goes even further. He's the man who was in charge at the time that said, yes, Larry, you may do that, good idea, thanks for doing that, you're helping us out, and I believe that is the reason why I chose to address those arguments in that section. Do you want to maintain your contract? I believe it's necessarily provisional for my client to maintain all the claims that he has brought, to at least elaborate on them. Right now we're facing rulings that are saying, you know, if you want to raise a claim based on a violation of your civil rights, in this case age discrimination, that that would be your exclusive remedy, right, under the Kentucky Civil Rights Act. It subsumes them. What we're saying, well, no. The contract theory is completely separate from that. Correct. And so we choose to raise those in these courts to say, well, you know, the way that the law is coming down, it must be because of age. Well, we have other claims that we need to bring, too, such as problems with story estoppel. In this case, the man was told that he could do this, did it for 20 years, continued to do it, and it wasn't until they decided to fire people because of their age that they found a reason to get rid of them, and that was the reason. And, you know, when my client comes to me, I assess it. I think, you know, what can I bring, and that would be the promissory estoppel claim, basically. It was oral. They gave it to him. He did it for 20 years and continued to do so, and it wasn't until, hey, well, we got Larry. You know he's selling the pallets. That's fair. Let's get rid of him. No unemployment, no severance package. And keep in mind, Your Honor, that this was in January 2013. The company Bellbrand started giving older workers a severance package, voluntary lease packages, but they didn't give one to Larry Downs. That raises an issue for our slinky case, but that's separate. Essentially we're saying that it's within such a close proximity, other people got one, Larry Downs didn't, and we can only assume because we haven't gotten to the discovery phase because we were foreclosed on that, that close proximity signals that they looked at that as a contrived or pretextual reason to get rid of him. Hey, we've identified Larry. We got something on him. Let's get rid of him. But these other people, let's give them a package. We'll spend some money there, but Larry, he's expendable. He's gone, and it was because of his age. Are there any other allegations or facts in the complaint that would support an inference that Bell terminated Downs due to his age? I guess there's the issue of the pallets and these buyout offers that were made to some and not others. Are there any other facts that you'd rely on to support the state of claim of age discrimination? Certainly. And, Your Honor, those were the facts in the complaint. It was basically starting in January they began giving the buyout package. Larry Downs had permission to sell the pallets, the damaged pallets, and then he was fired. Those are the factual allegations. Those were pled with particularity in the complaint, saying that, hey, this individual did this, he had that, and then they got rid of him. Those were facts in the complaint. The court must deem those to be true and accurate, cannot assume that they're false or at all. I say it, and for the purposes of 12b-6 Mosin, it's true, that January they gave the package away. By May, they decided to terminate Larry Downs. It's pretextual, it's contrived, but those, to answer your specific question, Your Honor, those are the facts that we allege that must be taken as true. Do the affidavits really add anything in terms of factual allegations that are not already in the complaint? The complaint seems to have the same sort of claims that are set forth in the two affidavits. Certainly. I'm just wondering what would the affidavits add? Let's say that they should have been admitted. What more would they have added? The affidavit of John Pierre Plessy is the individual, again, who gave Larry Downs the authorization to sell these pallets. That makes it crystal clear to the court that Larry Downs did have permission to sell these and did have permission from the company in 1990 by the actual man who gave it to him, the supervisor. Keep in mind later he was fired by a plant manager and a supervisor. Also, going back to the complaint, you asked about any other factual significance in there. It does say that they told Larry Downs, and I believe I'm up. You can finish. They did tell Larry Downs that they called John Pierre Plessy's Richard Grace and Francis Modry, and they denied it. Well, the affidavit says from John Pierre Plessy's, no one ever called me. That's a lie. That's in the complaint, that they lied to him. Okay. You will have your rebuttal time. Thank you. Thank you, Your Honor. Good morning. May it please the Court, my name is Richard McCardle from the law firm CIFAR-Shaw. I represent Bell Brands. I'd like to jump into this conversation to talk about Mr. Downs' age claim. If the Court carefully reviews the complaint, I think the Court will conclude Mr. Downs actually doesn't plead any facts in which the Court can reasonably infer that he has a plausible claim of age discrimination. He actually doesn't even plead he's in the age-protected category. The complaint tells the story of the pallet procedure from its genesis and its evolution over 20 years before Bell Brands owned the company up through the date of the investigation that led to the termination of Mr. Downs. And then, kind of out of left field, comes the allegation that he was terminated because of his age in violation of the Kentucky Civil Rights Act. The one allegation he does make, I think it's in paragraph 32, that on information and belief, older employees were terminated for questionable reasons. That's not a fact. That's a conclusion. But turning to the contract theory he's got, that he was told, he says, claims that he was told that he could sell the warehouse pallets by two superiors. And then, which would seem to me, taken as true, form a kind of agreement that he could sell those and keep the money. And then he claims that subsequently, when a new supervisor came in, he was fired for the very reason that he was fired. Why does that not state a contract theory? Your Honor, Mr. Downs has not pled a breach of contract. He has pled promissory estoppel. He has pled two different types of promissory estoppel, which are really wrongful discharge claims. Well, a promissory estoppel is kind of like, in this case, an implied contract. And he sets out these facts in his complaint, as I read it, counsel, in paragraphs 25, 26, 27, and 28. I mean, he alleges these facts that, as I understand it, that I just recited about how this pallet problem arose. And so how can that be dismissed on the pleadings? If I can address that. Under in Kentucky, for promissory estoppel to be a viable claim for wrongful discharge, the promise at issue must be a promise of job security. Mr. Downs does not allege he received a promise of job security. Counsel, you mean, I don't understand. If they assured him that he could do this and then fired him for it, under Kentucky law, Kentucky says that's too bad? Kentucky says it must be an explicit promise of job security. And if you look at his complaint in paragraph 25. You mean you've got to put in quotes, you have got a promise of job security? Can't you have an implied promise that you're not going to be fired if you do this? Sorry to interrupt you, Judge. I don't believe so. And the reason is this. In Kentucky, the at-will employment doctrine is longstanding and it is clear and it is unequivocal. And it says an employee can be terminated for good cause, no cause, or cause that some may view as morally indefensible. I'm quite certain Mr. Downs believes what happened to him was unfair. But in Kentucky, under the at-will doctrine, unfair is not necessarily unlawful. I would also point the court to two decisions we cite in our brief. Harris v. Burger King and Dorger v. Allstate. Neither of those cases does Mr. Downs address or dispute. But the Dorger case is particularly instructive. It's almost nearly on point with this case. In that case, Judge, the plaintiff was a claims adjuster at an automobile repair shop. She worked for Allstate Insurance. She was told by her supervisor that she was allowed to double-book appointments. And subsequently, she was terminated in part for double-booking appointments. And the court concluded that's not a promise of job security. That's, in Kentucky, not going to take you out of the employment at-will context and create a new exception to the employment at-will doctrine. And, therefore, that's not an actual promise. It's actually not a viable cause of action in Kentucky. But, you know, you cited this McCarthy case, McCarthy v. Louisville-Cartage, and it seems maybe to go the other way, where the Kentucky Court of Appeals applied promissory estoppel even though there was no promise of job security, if I'm correct. Judge, the McCarthy case, a couple ways to distinguish it. One, it's not a wrongful discharge case. Employment at-will never comes into it. Two, the plaintiff in that case was able to establish all the elements of promissory estoppel. The facts are clearly different, and I'll review them. First of all, at the outset of employment, the employer in that case told their employees, we will buy you life insurance. Then the employer told the employees, we're buying a different policy for life insurance. The employer did not tell the employees later on that they failed to pay the premiums on those life insurance policies. The employees all assumed that they had life insurance. An employee passes away. His widow proceeds to collect on the insurance policy only to find out there is no life insurance policy, and the court held that the promise by the employer that it had purchased the life insurance policy should have induced reasonable reliance upon the executrix of the employee's estate to her detriment, and the only way to remedy the problem was to award her the proceeds from the life insurance. You're really arguing that the at-will employment concept covers everything in Kentucky, and an employee and an employer cannot have an internal agreement that the employee can do certain things or not do certain things and will not be fired if that happens, but that doesn't make any difference. The employer can go ahead and tell the employee, you may do this or not do that, and have an understanding and an agreement with the employee and still fire the employee if the employee does what the employer says is okay. Anytime. It just covers the water run. At-will employment means that whatever internal contracts the employer may have with the employee are of no effect and can't be enforced. Well, what we're saying is there are two reasons why the promissory-stop-wrongful-discharge claim that we're discussing fails. One is what you just mentioned, Judge Merritt, and what I mentioned before. This individual was an employee at will who did not receive a promise of job security. But two, he did receive a promise, at least implicitly, that he wasn't going to be fired if he sold the pallets, and he claims that he was fired for that very reason. Well, Your Honor, that's not exactly clear from the complaint. If you look at paragraph 15, I think that is what counsel would like to read into the complaint. But paragraph 15 says, John Plessy, it's actually Plessis, John Plessis authorized the plaintiff to keep the reimbursement check because he was performing a task that no one else wanted to complete as a bonus for his extra work. We're looking at paragraphs 25, 26, 27, and 28, which is about the pallets, and what he was told and about then his discharge subsequently. That's the part of the complaint I'm looking at. Right, and in that part of the complaint, what Mr. Downs alleges is that two subsequent managers acquiesced to the pallet procedure. But what we're saying is he not only doesn't get out of the starting gate on his promissory stop-all claim because of employment at will, but Mr. Downs cannot establish the element of detrimental reliance under his promissory stop-all claim. And the reason is he was already performing the task of removing the pallets. He engaged in the conduct before he went to his supervisor and said, I got this check from the vendor, can I keep it? And the supervisor says, you can keep it. He did not change his position in reliance upon what the supervisor said. He was already engaged in the conduct. He can't establish detrimental reliance. But what about the continuing conduct? And he didn't just sell pallets once, as I understand this. The continuing conduct is really the same analysis. At the inception of the conduct, and actually, Mr. Plessis's affidavit, if you read it carefully, says that Mr. Downs volunteered to initiate this pallet procedure. So I believe, Judge, that the initiation of that procedure at the very outset really destroys his detrimental reliance claim for the next 20 years. He didn't change his conduct based upon anything that Plessis said. That's debatable. Shouldn't a jury or fact finder decide about that? I mean, we're going to just preempt the trial by jury in the Seventh Amendment where you have a factual dispute about inferences to be made from conduct and what was said? Well, in this case, Judge, we think Rule 8 and Rule 12b-6 serve their purpose. Rule 8 is a gatekeeping function, and the district court, we believe, got it right, that Mr. Downs did not plead sufficient facts so you could reasonably infer he was either terminated because of his age or that he has even a viable cause of action under his two promissory stopple theories. Now, I haven't talked about the other promissory stopple theory, and I'd like to address that. His other promissory stopple theory is a mirror image of his Kentucky Civil Rights Act claim. In his Kentucky Civil Rights Act claim, he asserts that he was terminated because of his age in violation of the statute. Under his first promissory stopple claim, he alleges that he was terminated in violation of Bell Brand's policies that prohibit discrimination in the workplace. And we cited a case, Pugliese, which stands for the proposition, that that promissory stopple claim is preempted by the Kentucky Civil Rights claim. What is your submission for the reason that he was discharged? That we had a salaried warehouse supervisor selling company property and pocketing the proceeds. He said he was given permission. He says he was given permission before he was a supervisor, given permission 20 years ago before we owned the company, and upon the investigation... The supervisor did fire him for precisely selling the palace. It's not in the record, but I believe that is the case. He was terminated for selling company property as a salaried employee and keeping the proceeds. And that's the palace. That's correct. And this policy, whatever you want to call it, allowing Mr. Downs to sell these palaces, it continued through several of his supervisors. It wasn't just Mr. Plessis, was it? I mean, didn't others who came afterwards also condone it or say it was okay? According to the complaint, two other supervisors acquiesced in the policy of selling palace. I would also like to address the two affidavits. The court below ruled and ruled correctly that the affidavits were procedurally improper. They weren't submitted in conjunction with a motion for relief. They were submitted in opposition to our motion to dismiss, which under Rule 6C was procedurally improper. That said, the court took a look at those affidavits in any event and concluded that they did not address the claims or the defenses that we had raised. They weren't based upon personal knowledge. They lacked foundation. And this court's decision in Ristenberg has held that a lower court is given quite a bit of deference. I believe it's an abuse of discretion standard if the lower court decides that it's not going to go outside the four corners of the complaint and consider matters outside of the complaint in ruling on a motion to dismiss. That's what the court did, but I believe what the court concluded, it would not have mattered in any event. The Plessis affidavit is based upon personal knowledge or experience, isn't it? I mean, I'd say the Roof affidavit is based upon a supposed general understanding of what was occurring in the company and maybe did not reflect that affiant's knowledge. But the Plessis affidavit was very specific. I thought... That's a fair point, Your Honor. The Plessis affidavit does not help Mr. Downs' case because it demonstrates that it was Mr. Downs who initiated this conduct. He did not change his conduct in reliance upon anything Mr. Plessis said. He sought permission and an agreement from the company. After he engaged in the conduct. And they said that they encouraged him to do it according to what I understand to be his submission. What Plessis alleged to have said is you can keep the check, not the check's ad infinitum. You can keep the check. That's what's represented in the complaint in paragraph 15. Okay. Thank you, Mr. McCardle. Thank you.  Mr. Abel. Thank you, Your Honor. Just to address the issues with the contract and its inception in 1990. That was reaffirmed over three times from 1990 to 2013. John Pierre Plessis, who gave an affidavit based on personal knowledge, said that he allowed him to do it. He saw nothing wrong with it. It was helping the company. Larry Downs continued to help the company until he was terminated for helping the company. Francis Modry and Richard Grace, as early as 2012, reaffirmed that this pallet procedure was okay. In fact, said, I see nothing wrong with that. I would need something, too. Larry Downs was taking something that was getting in the way of the company and getting rid of it. They gave him the express authorization to do it. As we addressed the Louisville McCarty case, that talks about whether there's a fringe benefit, and that could open the door to a provisory stop. My argument with that is selling old and damaged pallets would be considered a fringe benefit. He would have to take those proceeds. And earlier today we heard a case from the IRS who collects any revenue in any form whatsoever. Larry Downs would be required to report that as revenue for his tax returns. That is a fringe benefit that he got from his employer. They allowed him to do that. I'm asking for a jury trial to determine the facts here. I'm asking for a jury trial to determine the facts of this case, Your Honor. Thank you. Thank you. I appreciate your arguments today. The case will be submitted, and the clerk may call the next case.